UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACE SECURITIES CORP. HOME EQUITY LOAN
TRUST, SERIES 2007-HE3 by HSBC BANK USA,
NATIONAL ASSOCIATION, in its capacity as
Trustee,

                    Plaintiff,

                  -against-

DB STRUCTURED PRODUCTS, INC.,

                    Defendant.

No. 13 Civ. 1869 (AJN)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

HOLWELL SHUSTER & GOLDBERG LLP
125 Broad Street, 39th Floor
New York, NY 10004
Telephone:    (646) 837-5151
Facsimile:    (646) 837-5150

*Attorneys for Plaintiff*

Dated:    New York, NY
           June 14, 2013

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.  THE COMPLAINT STATES CLAIMS FOR BREACH OF
    CONTRACT ...................................................................................................................... 3

    A.  DBSP's Arguments Regarding Remedies Are Premature And
        Inapplicable On A Motion To Dismiss .................................................................. 3

    B.  Contract Damages Are Available .......................................................................... 5

    C.  The Complaint Sufficiently Pleads Breaches With Respect To
        *At Least* 1,033 Mortgage Loans .......................................................................... 9

    D.  DBSP's Contention That There Is No Relief As To Liquidated
        And Foreclosed Loans Is Flawed And Premature ............................................... 12

        1.  The Trustee Provided Timely And Sufficient Notice Of
            DBSP's Breaches Of Its Representations And Warranties .................... 13

        2.  DBSP Must Answer For Breaching Loans, Even If
            Liquidated ................................................................................................ 14

            a)  The PSA Does Not Exclude "Liquidated Loans"
                From DBSP's Obligations .......................................................... 14

            b)  Liquidated Loans Can Be Repurchased ..................................... 16

            c)  The Repurchase Price for Liquidated Loans Is
                Not Zero, But In Any Event Presents An Inherent
                Fact Question ............................................................................ 19

        3.  DBSP's Initial Breaches Make The Liquidated Loan
            Argument Irrelevant ................................................................................ 22

        4.  Failing All Else, The Trustee Is Entitled To Rescissory
            Damages .................................................................................................. 22

II.  PLAINTIFF STATES A VALID CLAIM FOR DECLARATORY
     JUDGMENT ................................................................................................................. 24

CONCLUSION ...................................................................................................................... 25

i

## TABLE OF AUTHORITIES

Pages

**Cases**

*438 Main St., Inc. v. Vandor, Inc.*,
No. 12000/6820, 2002 WL 32128611 (N.Y. Cnty. Ct. Sept. 13, 2002) ........................ 17

*ACE Secs. Corp. Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Prods., Inc.*,
No. 650980/2012, 2013 WL 1981345 (Sup. Ct. N.Y. Cnty. May 13, 2013)………..*passim*

*Ambac Assur. Corp. v. EMC Mortg. Corp.*,
No. 08 Civ. 9464, 2009 WL 734073 (S.D.N.Y. Mar. 16, 2009)…………………………4

*Arista Records v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)………………………………………………………………….5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)………………………………………………………………………3

*Assured Guar. Mun. Corp. v. DB Structured Prods. Inc.*,
927 N.Y.S.2d 880 (Sup. Ct. N.Y. Cnty. 2011)…………………………….....................14

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
No. 11 Civ. 2375, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011)……………………..6, 21

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
No. 11 Civ. 2375, ___F.Supp.2d___, 2013 WL 440114 (S.D.N.Y. Feb. 5, 2013) ..................................................................................................... 7, 9, 12 19

*Assured Guar. Mun. Corp. v. UBS Real Estate Secs., Inc.*,
No. 12-cv-1579, 2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012)........................................ 4

*Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*,
37 Misc.3d 1212(A), 2012 WL 5192752 (Sup. Ct. N.Y. Cnty. Oct. 11, 2012)................. 8

*Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*,
No. CIV.A. 6861-CS, 2013 WL 164098 (Del. Ch. Jan. 15, 2013) .................................... 7

*Bensen v. Am. Ultramar Ltd.*,
No. 92 Civ. 4420, 1997 WL 317343 (S.D.N.Y. June 12, 1997)....................................... 22

*Big Apple Car, Inc. v. City of New York*,
204 A.D.2d 109 (1st Dep't 1994) .................................................................................... 23

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    778 F. Supp. 2d 375 (S.D.N.Y. 2011)……………………………………………………3

*Buffalo Builders Supply Co. v. Reeb*,
    247 N.Y. 170 (1928)…………………………………………………………………..23

*Burkina Wear, Inc. v. Campagnolo, S.R.L.*,
    No. 07 CIV. 3610, 2008 WL 1007634 (S.D.N.Y. Apr. 9, 2008)…………………………3

*Canfield v. Reynolds*,
    631 F.2d 169 (2d Cir. 1980)…………………………………………………………...23

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
    95 A.D.2d 5 (4th Dep't 1983) ......................................................................................... 9

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*,
    No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) ............................................ 13

*City of New York v. A-1 Jewelry & Pawn, Inc.*,
    247 F.R.D. 296 (E.D.N.Y. 2007)………………………………………………………4

*Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*,
    88 A.D.2d 461 (2d Dep't 1982) ..................................................................................... 23

*Cornell v. T.V. Dev. Corp.*,
    17 N.Y.2d 69 (1966) ...................................................................................................... 22

*Deutsche Lufthansa AG v. The Boeing Co.*,
    No. 06 CV 7667, 2006 WL 3155273 (S.D.N.Y. Oct. 30, 2006)....................................... 6

*Doyle v. Allstate Ins. Co.*,
    1 N.Y.2d 439 (1956) ...................................................................................................... 23

*Edison v. Viva Int'l, Ltd.*,
    70 A.D.2d 379 (1st Dep't 1979) .................................................................................... 19

*Enzo Biochem, Inc. v. Johnson & Johnson*,
    No. 87 Civ. 6125, 1992 WL 309613 (S.D.N.Y. Oct. 15, 1992)…………………………24

*First Place Bank v. Skyline Funding, Inc.*,
    No. 10 CV 2044, 2011 WL 3273071 (N.D. Ill. July 27, 2011) ...................................... 16

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co., Inc.*,
    212 A.D.2d 577 (2d Dep't 1995) ..................................................................... 8

*Grand Union Co. v. Cord Meyer Dev. Co.*,
    761 F.2d 141 (2d Cir. 1985) ........................................................................... 23

*In re ResMAE Bankruptcy*,
    No. 07-10177 (Bankr. D. Del. July 11, 2007) ................................................. 18

*K.M.L. Labs. Ltd. v. Hopper*,
    830 F. Supp. 159 (E.D.N.Y. 1993) ................................................................ 23

*Kasen v. Morrell*,
    6 A.D.2d 816 (2d Dep't 1958) ....................................................................... 19

*Kemi, Inc. v. Berlitz Int'l, Inc.*,
    228 A.D.2d 281 (1st Dep't 1996) ..................................................................... 5

*LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*,
    237 F. Supp. 2d 618 (D. Md. 2002) ..................................................... 6, 13, 19

*LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*,
    No. 02 CV 9916, 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005) .................... 17

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    72 A.D.3d 409 (1st Dep't 2010) .................................................................... 22

*Lehman Bros. Holdings, Inc. v. Key Fin. Corp.*,
    No. 09-cv-623, 2011 WL 1296731 (M.D. Fla. Mar. 31, 2011) ........................ 7

*Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc.*,
    No. 1:04-cv-1432, 2007 WL 2904591 (S.D. Ind. Sept. 28, 2007) ............. 13, 14

*Lehman Bros. Holdings, Inc. v. PMC Bancorp*,
    No. 10-cv-07207, 2013 WL 1095458 (C.D. Cal. Mar. 8, 2013) ....................... 7

*Lumbard v. Maglia, Inc.*,
    621 F. Supp. 1529 (S.D.N.Y. 1985) ……………………………………………9

*M&I Bank, FSB v. Coughlin*,
    No. CV 09-02282, 2012 WL 602365 (D. Ariz. Feb. 24, 2012) ...................... 13

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Manolis v. Brecher*,
    No. 11 Civ. 2750, 2012 WL 527450 (S.D.N.Y. Feb. 16, 2012)............................10

*Marvel Worldwide, Inc. v. Kirby*,
    756 F. Supp. 2d 461 (S.D.N.Y. 2010)..................................................................24

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp*,
    843 F. Supp. 2d 996 (D. Minn. 2012)................................................................. 13

*MASTR Asset Backed Secs. Trust 2006-HE3 v. WMC Mortg. Corp.*,
    No. 11-2542, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) ............................. 16

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    105 A.D.3d 412 (1st Dep't 2013)................................................................. 7, 23

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    30 Misc.3d 1201(A), 958 N.Y.S.2d 647 (Sup. Ct. N.Y. Cnty. 2010)...................... 12

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    No. 602825/08, 39 Misc.3d 1220(A) (Sup. Ct. N.Y. Cnty. Apr. 29, 2013) ...................... 7

*MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, 32 Misc.3d 758,
    927 N.Y.S.2d 517 (Sup. Ct. N.Y. Cnty. 2011) ...................................................... 11, 12

*MBIA Ins. Co. v. Residential Funding Co., LLC*,
    No. 603552/08, 2009 WL 5178337 (Sup. Ct. N.Y. Cnty. Dec. 22, 2009) ..................22

*Mendez v. Oakmont Mortg. Co., Inc.*,
    No. 10 CV 1970, 2010 WL 4818000 (S.D. Cal. Nov. 22, 2010).................................... 16

*Milligan v. Wigs*,
    34 Misc. 3d 128(A), 941 N.Y.S.2d 539 (Sup. Ct. App. Term 2011).........................9

*Mionis v. Bank Julius Baer & Co., Ltd.*,
    301 A.D.2d 104 (1st Dep't 2002) .................................................................... 15

*Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Co.*,
    No. 00-cv-8613, 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002)..............................11

*Nack Holdings, LLC v. Kalb*,
    13 So. 3d 92 (Fla. Dist. Ct. App. 2009) ...........................................................16

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Norwalk CORE v. Norwalk Redev. Agency*,
    395 F.2d 920 (2d Cir. 1968)……………………………………………………………4

*Nowak v. Ironworkers Local 6 Pension Fund*,
    81 F.3d 1182 (2d Cir. 1996).............................................................................................. 19

*Orix Real Estate Capital Mkts., LLC v. Superior Bank, FSB*,
    127 F. Supp. 2d 981 (N.D. Ill. 2000) ........................................................................ 4, 9

*Reape v. N.Y. News, Inc.*,
    122 A.D.2d 29 (2d Dep't 1986) ...................................................................................... 22

*Resolution Trust Corp. v. Key Fin. Servs., Inc.*,
    280 F.3d 12 (1st Cir. 2002).............................................................................. 4, 7, 17, 19

*Rosewood Apts. Corp. v. Perpignano*,
    200 F. Supp. 2d 269 (S.D.N.Y. 2002)............................................................................ 23

*Rubinstein v. Rubinstein*,
    23 N.Y.2d 293 (1968) ....................................................................................................... 6

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008)............................................................................................. 3

*Sanford v. Brown Bros. Co.*,
    134 A.D. 652 (2d Dep't 1909) ......................................................................................... 6

*Shilkoff, Inc. v. 885 Third Ave. Corp.*,
    299 A.D.2d 253 (1st Dep't 2002)……………………………………………………..10

*Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys. LLC*,
    842 F. Supp. 2d 502 (S.D.N.Y. 2012)..............................................................................8

*Sterling Fed. Bank, F.S.B. v. Credit Suisse First Boston Corp.*,
    No. 07-C-2922, 2008 WL 4924926 (N.D. Ill. Nov. 14, 2008)…………………………..10

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
    No. 09 Civ. 3106, 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) .................................. 12

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Trust for the Cert. Holders of the Merrill Lynch Mortg. Pass-Through Certs. Series 1999-C1 v. Love Funding Corp.*,
No. 04 Civ. 9890, 2005 WL 2582177 (S.D.N.Y. Oct. 11, 2005) ..................................... 17

*Trust for the Certificate Holders of the Merrill Lynch Mortg. Pass-Through Certs. Series 1999-C1 v. Love Funding Corp.*,
736 F. Supp. 2d 716 (S.D.N.Y. 2010)............................................................................. 19

*Viti v. Guardian Life Ins. Co. of Am.*,
817 F. Supp. 2d 214 (S.D.N.Y. 2011)............................................................................... 3

*Weiss v. La Suisse*,
69 F. Supp. 2d 449 (S.D.N.Y. 1999)…………………………………………………10

*Wells Fargo Bank, N.A. v. Bank of Am., N.A.*,
No. 10-cv-9584, 2013 WL 1285289 (S.D.N.Y. Mar. 28, 2013)........................... 7, 17, 18

*Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*,
No. Civ. 08 1125, 2011 WL 3739170 (W.D. Okla. 2011)................................................ 17

**Statutes**

Fᴇᴅ. R. Cɪᴠ. P. 8............................................................................................................... 10

Fᴇᴅ. R. Cɪᴠ. P. 8(a) .................................................................................................... 5, 23

Fᴇᴅ. R. Cɪᴠ. P. 9(b) .................................................................................................... 5, 23

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6)................................................................................................. 3, 9

Fᴇᴅ. R. Cɪᴠ. P. 54(c)......................................................................................................... 4

**Other Authorities**

Nate Raymond, *Judge Raises Flagstar Liability in Mortgage Case to $106.5mln*, Cʜɪ. Tʀɪʙ., Apr. 1, 2013 ....................................................................................................................... 7

**Treatises**

Restatement (Third) of Property (Mortgages), § 8.5 (1997) (comment c) ....................................17

**PRELIMINARY STATEMENT**

DBSP created the Plaintiff securitization Trust for the purpose of selling to investors securities backed by mortgages held by the Trust.  DBSP represented to investors, in securities filings and contracts at issue here, that the mortgages were soundly originated, free of borrower fraud, and had certain specified characteristics.  Despite these representations, DBSP dumped into the Trust a massive number of defective loans – loans that blatantly breached DBSP's representations and warranties.  DBSP knew this on day one of the Trust's existence, but failed to do anything about it, despite an express contractual obligation to substitute, cure, or repurchase breaching loans.  DBSP now argues that, if only the Court will read the applicable agreements the right way, it will see that the Trustee has no remedy at all for DBSP's breaches, and that that's exactly how the parties wanted it.  DBSP's arguments, which it repeats in many similar cases, are wishful thinking.  Such arguments can be sustained at this point only if the Court ignores the actual language in the parties' contracts, and the factual allegations in the Complaint, not to mention the commercial absurdity of DBSP's position itself, which would perversely incentivize bad faith behavior and unfair dealing.

DBSP argues that the PSA's "sole remedy" provisions preclude the Trust's claims for damages, and that the Trust is limited to specific performance (the Complaint's third alternative cause of action).  DBSP is wrong.  The agreements provide that the Trustee's remedies are cumulative and non-exclusive, and in any event the "sole remedy" language upon which DBSP relies by its plain terms does not preclude damages claims for DBSP's breaches of its cure and repurchase obligations (which, as this and other courts have held, are actionable contractual undertakings independent of DBSP's representations and warranties).

DBSP's sole remedy argument must be seen for what it is – an attempt to evade all responsibility for its breaches.  While arguing that specific performance is the only remedy,

1

DBSP at the same time argues that, during the years it might take the Trustee to discover the breaches, demand repurchase, and then obtain the requisite specific performance order, if losses are mitigated through foreclosure, then DBSP is off the hook altogether because there is no "Mortgage Loan" to be repurchased.  The idea that DBSP can filibuster in this manner until its obligations disappear into thin air is commercially absurd, but more importantly, ignores completely the actual language of the applicable contracts.

Under the agreements, loans that have been liquidated are still "Mortgage Loans" subject to repurchase, plain and simple.  Contractual provisions prescribing certain capital structure requirements so as to ensure the value of the portfolio is not overstated in relation to securities, on their face, do not impact DBSP's repurchase obligation, yet DBSP takes them and seeks to turn them on investors.  Furthermore, as the breaching party, DBSP cannot invoke mitigation of damages as a basis for avoiding liability entirely.  Moreover, this is not a motion to dismiss issue. The Complaint does not contain any allegations that any loans have been liquidated, and the purported evidence DBSP puts forward cannot properly be considered on a motion to dismiss.

DBSP places heavy emphasis on the Trustee's breach notices (the "Breach Notices") – ironically, the same notices that it has chosen to ignore.  This entirely sidesteps the fact that DBSP had a contractual obligation to repurchase loans that _DBSP_ itself discovered to be in breach, without the necessity of receiving _any_ notice from _any_ other party.  The Complaint alleges that DBSP "discovered" such breaches on day one of the securitization, yet failed to repurchase any of the breaching loans.  Those allegations comprise a fully cognizable breach of contract claim.  DBSP additionally had, and breached, a separate obligation to cure and

repurchase breaching Mortgage Loans identified by the Trustee in the Breach Notices.  Those

allegations are likewise sufficient to assert an independent breach of contract claim.[1]

## ARGUMENT

On a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual

allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor."

*Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).  The court's analysis is "confined

to the allegations contained within the four corners of the complaint" and "any written

instrument attached to [the complaint] or any statements or documents incorporated in it by

reference."  *Viti v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 223 (S.D.N.Y. 2011).  To

survive, a complaint need only "contain sufficient factual matter" to support a "reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  "The issue is not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims."  *BNP Paribas Mortg. Corp. v. Bank

of Am., N.A.*, 778 F. Supp. 2d 375, 394 (S.D.N.Y. 2011).

## I.   THE COMPLAINT STATES CLAIMS FOR BREACH OF CONTRACT

### A.   DBSP's Arguments Regarding Remedies Are Premature And Inapplicable On A Motion To Dismiss

Any determination as to remedies would be premature, when the court's sole

consideration is whether plaintiff's complaint states a claim.  *See Burkina Wear, Inc. v.

Campagnolo, S.R.L.*, No. 07 CIV. 3610, 2008 WL 1007634, at *3 (S.D.N.Y. Apr. 9, 2008)

("[T]he question of whether a plaintiff has stated a claim turns not on whether he has asked for

the proper remedy but whether he is entitled to any remedy."); *City of New York v. A-1 Jewelry*

---

[1] Throughout this brief, any emphasis is added, and any internal quotation marks, citations, and alterations in quotation marks are omitted unless otherwise indicated.

*& Pawn, Inc.,* 247 F.R.D. 296, 353 (E.D.N.Y. 2007) ("[A] motion for failure to state a claim properly addresses the cause of action alleged, not the remedy sought.  It is the court that will craft any remedy."); *Assured Guar. Mun. Corp. v. UBS Real Estate Secs., Inc.*, No. 12-cv-1579, 2012 WL 3525613, at *7 (S.D.N.Y. Aug. 15, 2012) (rejecting defendant's argument that "sole remedy" repurchase obligation precluded an award of rescissory damages, ruling that "[i]t would be premature to strike a remedy at the pleadings stage"); *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 Civ. 9464, 2009 WL 734073, at *2 (S.D.N.Y. Mar. 16, 2009) (denying motion to strike prayer for rescissory damages because "[t]he relief provided for [Plaintiff's] claims will be determined if any entitlement to remedies is proved").

Moreover, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, "a complaint should not be dismissed for legal insufficiency except where there is a failure to state a claim on which *some* relief, not limited by the request in the complaint, can be granted."  *Norwalk CORE v. Norwalk Redev. Agency*, 395 F.2d 920, 925-26 (2d Cir. 1968) (emphasis in original); *see also Orix Real Estate Capital Markets v. Superior Bank, FSB*, 127 F. Supp. 2d 981, 983 (N.D. Ill. 2000) (applying Rule 54(c), rejecting argument that breach of warranty claim seeking compensatory damages must be dismissed based on PSA provision limiting remedies to cure or repurchase of breaching loans because, in either case, plaintiff would be entitled to "payment of an amount of money"); *cf. Resolution Trust Corp. v. Key. Fin. Servs.*, *Inc.*, 280 F.3d 12, 18 (1st Cir. 2002) (rejecting defendant's argument that contractual repurchase remedy precluded award of general contract damages, holding that "[w]hether or not [defendant] committed an independent breach by failing to repurchase on demand, the district court was free to make [plaintiff] whole").

### B. **Contract Damages Are Available**[2]

The Complaint states claims for breach of contract based on DBSP's breaches of its cure and repurchase obligations, which breaches entitle the Trustee to contract damages.[3]  The clear and overriding principle in the parties' agreements is that "[a]ll rights and remedies … under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity…."  MLPA § 12.  "Law [and] equity" unquestionably afford the Trustee "rights and remedies" for DBSP's breaches.  Those rights and remedies include causes of action for rescissory and compensatory damages.  DBSP's argument that, no matter what it did, no matter how severely it breached the contract, no matter that it has simply refused outright to cure a single breach or to buy back a single loan, the Trustee is limited to one single remedy and one only – specific performance – is at odds with the broad language above, and finds no support elsewhere in the PSA or the MLPA.

First, the "sole remedy" language upon which DBSP places such great weight is, at best, an *exception* to the much broader "all remedies are cumulative" rule in Section 12 of the MLPA.  Second, under New York law, which governs both the PSA and the MLPA,[4] exclusive remedy clauses like the ones DBSP relies on are narrowly construed.  *See Kemi, Inc. v. Berlitz Int'l, Inc.*, 228 A.D.2d 281, 281 (1st Dep't 1996); *Sanford v. Brown Bros. Co.*, 134 A.D. 652, 656 (2d Dep't

---

[2] DBSP's assertion that Plaintiff's cause of action for rescissory damages is subject to the heightened pleading requirements of Rule 9(b) is incorrect.  MTD, p. 16 n.19.  The Complaint asserts a classic breach of contract case based on DBSP's failure to perform its contractual obligations (*see, e.g.*, Compl. ¶¶ 1, 5, 17, 59-66, 77-90), not upon some theory of fraudulent misrepresentation.  As such, the Complaint is governed by the notice pleading requirements of Rule 8(a), which permits a plaintiff to allege facts "upon information and belief where the facts are peculiarly within the possession and control of the defendant … or where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Records v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010).

[3] *See ACE Secs. Corp., Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Prods., Inc.*, No. 650980/2012, 2013 WL 1981345, at *5 (Sup. Ct. N.Y. Cnty. May 13, 2013) ("*ACE 2006-SL2*") (PSA provides formula for "damages calculation").

[4] *See* PSA § 12.04; MLPA § 17.

1909).  Third, as a straightforward matter of contract construction, the "sole remedy" language in Section 7 of the MLPA by its plain terms applies to breaches of representations and warranties under Section 6 of that agreement, *not* to breaches of DBSP's other obligations, including the cure and repurchase obligations provided for in Section 7.  The PSA has a similar structure.  *See* PSA § 2.03(a).

Fourth, DBSP's contrary interpretation is belied by the plain language of the MLPA, which requires that DBSP "shall" promptly cure or repurchase breaching loans upon *its own discovery* of a breach.  On any straightforward reading, this language provides for a contractual obligation to be performed, and which is breachable, by the defendant.[5]  Under this language – calling for DBSP to self-report violations of its own representations and warranties, and to take remedial action – DBSP has a clear contractual obligation; one that should not have been ignored by DBSP and cannot be ignored by the Court.  This contractual obligation is there to protect investors.

In short, DBSP's cure and repurchase obligations are independently actionable as breaches and are not subject to the "sole remedy" language.  "Under New York law, a loan seller's failure to repurchase non-conforming loans upon demand as required by a contract is an *independent breach* of the contract entitling the plaintiff to pursue *general contract remedies* for breach of contract."  *LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 638 (D. Md. 2002) ("*LaSalle*").  *See also Assured Guar. Mun. Corp. v. Flagstar Bank, FSB,* No. 11 Civ. 2375, 2011 WL 5335566, at \*5 (S.D.N.Y. Oct. 31, 2011) ("*Flagstar I*") ("'[S]ole

---

[5] The cases DBSP relies on (*see* MTD, p. 9) are factually distinguishable.  *Deutsche Lufthansa AG v. The Boeing Co.*, No. 06 CV 7667, 2006 WL 3155273 (S.D.N.Y. Oct. 30, 2006) concerned a far broader sole remedy clause than the one at issue here, prescribing the remedy for all defaults under the agreement.   In *Rubinstein v. Rubinstein*, 23 N.Y.2d 293 (1968), the question presented was whether contractual language providing for monetary damages was sufficiently specific to bar plaintiff from obtaining equitable relief.

remedy' provisions [requiring cure or repurchase]… do *not* preclude [plaintiff] from bringing suit against [defendant] in the event that, as alleged here, [defendant] refuses to comply with its repurchase obligations"); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc*., No. 602825/08, 39 Misc.3d 1220(A), at *10 (Sup. Ct. N.Y. Cnty. Apr. 29, 2013) (First Department, in the same case (105 A.D.3d 412 (1st Dep't 2013)), did not limit plaintiff to repurchase as its sole remedy); *Resolution Trust*, 280 F.3d at 18 (defendant "committed an independent breach by failing to repurchase the loans upon [plaintiff's] demand, thus entitling [plaintiff] to general contract damages"); *Lehman Bros. Holdings, Inc. v. PMC Bancorp*, No. 10-cv-07207, 2013 WL 1095458, at *4 (C.D. Cal. Mar. 8, 2013) ("[U]nder New York law, a loan seller's failure to repurchase non-conforming loans upon demand as required by a contract is an independent breach of the contract entitling the plaintiff to pursue general contract remedies."); *Lehman Bros. Holdings, Inc. v. Key Fin. Corp.*, No. 8:09-cv-623, 2011 WL 1296731, at *11 (M.D. Fla. Mar. 31, 2011) (same) (applying New York law).

In *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375, __F. Supp. 2d __, 2013 WL 440114 (S.D.N.Y. Feb. 5, 2013) ("*Flagstar II*"), this Court awarded over $100 million in damages for the defendant's breach of its repurchase obligations.[6] *See also Wells Fargo Bank, N.A. v. Bank of Am., N.A.*, No. 10-cv-9584, 2013 WL 1285289, at *10-11 (S.D.N.Y. Mar. 28, 2013) ("*Wells Fargo II*") (awarding damages for breaches of representations and warranties). DBSP's authorities are not to the contrary.  The provision at issue in *Bear Stearns Mortg. Funding Trust 2007AR2 v. EMC Mortg. LLC*, No. 6861-CS, 2013 WL 164098 (Del. Ch. Jan. 15, 2013) concerns the proper interpretation of an indemnification clause, not an exclusive remedy

---

[6] *See* Nate Raymond, *Judge Raises Flagstar Liability in Mortgage Case to $106.5mln*, CHI. TRIB., Apr. 1, 2013, *available at* http://www.reuters.com/article/2013/04/01/assured-flagstar-judgment-idUSL2N0CO1TZ20130401.

clause.  The decision in *Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*, 37 Misc.3d
1212(A), 2012 WL 5192752, at *8 (Sup. Ct. N.Y. Cnty. Oct. 11, 2012) is similarly inapposite,
with the court deciding whether a sole remedy clause excluded claims for consequential
damages, not whether a breach of the obligation due as part of the prescribed remedy was
independently actionable.[7]

DBSP's "sole remedy" argument would not merely limit the Trustee to one remedy – it
would deprive the Trustee of *any* remedy.  Although it takes pains not to put the matter so
plainly, DBSP effectively argues that it can on its own discover a breach of a representation or
warranty, ignore its obligation based on that discovery to repurchase the breaching loans, keep
quiet about the breaches until the Servicer forecloses on the loan, then argue that the Trustee can
recover <u>*nothing*</u> for investors from DBSP because (says DBSP) the Trustee is limited only to
specific performance of the repurchase obligation and no repurchase of liquidated loans can be
had.  Such an interpretation is at odds with the contracts, law, and commercial reality.

Even if DBSP's interpretation of Section 7(a) of the MLPA were correct, and it is not, it
still would not warrant dismissal of the damages claims because of DBSP's gross negligence and
willful misconduct.[8]   DBSP's failure to repurchase was willful, and it was grossly negligent in
selling the loans to the Trust (or in not knowing they were in breach, as it claims) given its due
diligence responsibilities as the Sponsor.  *See* Compl. ¶¶ 3, 11-12, 41, 64, 85, 87.  DBSP has also

---

[7] *See ACE 2006-SL2*, where the New York State Supreme Court recently found that DBSP breached the PSA at
issue in that case when it "fail[ed] to abide by Section 2.03 [the repurchase obligation]" and that damages could be
sought for such a breach.  *ACE 2006-SL2*, 2013 WL 1981345, at *3.

[8] *See, e.g.*, *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 516 (S.D.N.Y. 2012)
("[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability
… [for its] willful or grossly negligent acts."); *Gold Connection Disc.  Jewelers, Inc. v. Am. Dist. Tel. Co., Inc.*, 212
A.D.2d 577, 578 (2d Dep't 1995) ("Although [limited liability] clauses in commercial contracts are enforceable …
for claims based on ordinary negligence, they will not preclude recovery in tort or breach of contract where the
losses are the result of gross negligence.").

willfully and repeatedly breached its ironclad commitment to promptly repurchase the breaching loans.[9]

Nor will sole remedy clauses be enforced where the contractually-specified remedy would fail of its essential purpose. *See, e.g., Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 6-7 (4th Dep't 1983) ("When … a limited remedy … fails of its essential purpose, the buyer is relieved of its restrictions and may resort to other remedies…."). DBSP's own arguments establish that the sole remedy to which it claims the Trustee is limited would fail of its essential purpose. DBSP argues that all it can be made to do is repurchase breaching loans via a specific performance order, but that it cannot be ordered to repurchase liquidated loans because they are not "available" to be repurchased. While, as discussed below, DBSP's liquidated loans argument is simply wrong, and the argument is premature, in interposing that argument, DBSP's point is to render the Trustee's sole purported remedy useless.[10]

### C. The Complaint Sufficiently Pleads Breaches With Respect to *At Least* 1,033 Mortgage Loans

DBSP's contention that Plaintiff is limited to asserting claims on only the 1,033 noticed Mortgage Loans referenced in the Complaint should be rejected. MTD, pp. 12-15. The MLPA

---

[9] It is well-settled that on a motion to dismiss pursuant to Rule 12(b)(6), the inquiry is not whether plaintiff has stated a cause of action, but whether he has one. *See Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1537 (S.D.N.Y. 1985) (under Rule 12(b)(6), "it need not appear that plaintiff can obtain the particular relief prayed for, as long as the court can ascertain that some relief may be granted").

[10] While DBSP contends that the "failure of essential purpose" doctrine is limited to contracts under the Uniform Commercial Code (*see* MTD, pp. 11-12), it fails to cite any authority in which a court has held the doctrine to be inapplicable in other contexts. By contrast, in a recent decision involving similar facts, the doctrine was in substance applied by this Court in the RMBS context, *see Flagstar II*, 2013 WL 440114, at *37 (awarding money damages is circumstances like those here), and at least one federal court has opined that "if the [failure of essential purpose] defense were to arise outside the UCC context, the New York courts would allow it." *Orix Real Estate*, 127 F. Supp. 2d at 983. DBSP's assertion that the doctrine cannot apply in the present case because "Plaintiff is entitled to repurchase—a 'refund' remedy" (MTD, p. 12) rings hollow in light of DBSP's (meritless) argument that any Breaching Loans "that have been liquidated and removed from the Trust are not subject to repurchase." *Id.* at 22. In any event, as made clear by the very case DBSP (incorrectly) relies upon to argue that the failure of essential purpose doctrine should not apply here, "[w]hether circumstances have caused a limited remedy to fail of its essential purpose ... is a question of fact" and accordingly, is not properly decided on a Motion to Dismiss. *Milligan v. Shuly's Wigs, Inc.*, 34 Misc. 3d 128(A), at *2, 941 N.Y.S.2d 539 (Sup. Ct. App. Term 2011).

and PSA provide that DBSP's repurchase obligations cover both breaching Mortgage Loans noticed by the Trustee as well as those independently discovered by DBSP. MLPA § 7(a); PSA § 2.03(a); *see* Compl. ¶¶ 1, 3, 10, 68, 77-79, 101, 104. The Complaint sets forth allegations that DBSP "discovered" a deluge of breaches at the time of the closing, yet failed to cure or repurchase a single breaching Mortgage Loan. Compl. ¶¶ 1, 3, 11-15, 41, 64, 80, 83, 104, 106. Accordingly, with respect to such independently discovered breaches, DBSP was under an obligation to cure or repurchase irrespective of whether it received notice from the Trustee.

Despite DBSP's contentions, Plaintiff's allegations with respect to the independently discovered breaches are more than adequate. Under Rule 8(a)(2), "Plaintiff need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis… At this stage, Plaintiffs are not required to plead exactly which mortgage loans are in default." *Sterling Fed. Bank, F.S.B. v. Credit Suisse First Boston Corp.*, No. 07-C-2922, 2008 WL 4924926, at \*12 (N.D. Ill. Nov. 14, 2008) (complaint sufficient where it identified the breached contractual provision and set forth facts demonstrating how defendant breached its duties); *see Manolis v. Brecher*, No. 11 Civ. 2750, 2012 WL 527450, at \*3 (S.D.N.Y. Feb. 16, 2012) ("Particularity in a contract pleading is not required.") (quoting *Shilkoff, Inc. v. 885 Third Ave. Corp.*, 299 A.D.2d 253, 254 (1st Dep't 2002)); *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999) ("[T]here is no requirement in the Federal Rules of Civil Procedure that the details of a breach of contract claim be pleaded with particularity. Instead, the short, plain notice rule of Fed. R. Civ. P. 8 applies."). *See also ACE 2006-SL2*, 2013 WL 1981345, at \*5 ("Trustee's failure to set forth which of the specific loans are affected by false Representations is not fatal to the Complaint…"); *MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, 927 N.Y.S.2d 517, 534 (Sup. Ct. N.Y. Cnty. 2011), *rev'd on*

10

*other grounds*, 102 A.D.3d 488 (1st Dep't 2013) ("Although MBIA may ultimately be required

to itemize the breaches constituting its contract claims, the pleadings give sufficient notice of the

claims at this juncture.").

Notwithstanding DBSP's attacks on the allegations concerning its independent discovery

of and subsequent failure to repurchase the breaching loans, the Complaint is replete with facts to

support them. *See, e.g.*, Compl. ¶¶ 1, 3, 11-15, 41, 64, 80, 85, 104, 106. What DBSP learned

about each breaching loan, and when, is an inherent fact question and will be a principal focus of

discovery here. Even if the Complaint did not allege actual discovery of the breaches – but of

course it does (*id.*) – it sufficiently alleges that DBSP, as the Sponsor, discovered the breaches

when it knew or should have known that a breach had occurred.[11]  As the party that selected the

loans to be securitized, had full access to the loan files, sold the loans to the Trust, and made

dozens of representations as to each loan, DBSP knew, or certainly should have known, of the

breaches.

DBSP's arguments amount to a suggestion that the Trustee can only recover on breaching

loans that were expressly identified in Breach Notices. Not only is DBSP wrong on the facts, as

its repurchase obligation exists regardless of notice here, but it is wrong on the law as well. New

York courts routinely accept "sampling" to extrapolate breach rates across mortgage loan pools.

---

[11] Courts have found that "[a] party 'discovers' a breach when it knows or *should know* that the breach has occurred." *Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*, No. 00-cv-8613, 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002). The Trustee is not held to the same "discovery" standard under the agreements. *See* PSA § 9.02(a)(viii) ("Trustee shall not be deemed to have notice of any default … unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by a Responsible Officer of the Trustee…"). *See also* PSA § 9.02(a)(v) (Trustee "shall [not] be bound to make any investigation into the facts or matters stated in any … notice" it receives with respect to the Trust); MLPA § 4(e) (failure of any party "to conduct any partial or complete examination of the Mortgage [Loan] Files shall not affect the rights of the Purchaser or any assignee, transferee or designee of the Purchaser [*i.e.*, the Trustee] to demand repurchase or other relief as provided herein or under the [PSA]"); MLPA § 7(a). Moreover, as the New York State Supreme Court observed in *ACE 2006-SL2*, the Trustee does not "have an implied duty to conduct constant due diligence on the veracity of the Representations to ensure that lies are ferreted out before the time to make a repurchase demand expires. It is not commercially reasonable to read this obligation into the PSA because it is squarely at odds with Section 7(a) of the MLPA." 2013 WL 1981345, at *3.

*See* Endorsed Letter, *Assured Guar. Mun. Corp. v. UBS Real Estate Secs., Inc.*, No. 12-cv-1579

(S.D.N.Y. Apr. 1, 2013), ECF No. 86 (allowing sampling); *Flagstar II*, 2013 WL 440114, at *36

("Sampling is a widely accepted method of proof in cases brought under New York law,

including in cases relating to RMBS and involving repurchase claims."); *Syncora Guarantee Inc.*

*v. EMC Mortg. Corp.*, No. 09 Civ. 3106, 2011 WL 1135007, at *4 (S.D.N.Y. Mar. 25, 2011)

(holding plaintiff could seek a pool-wide remedy based on sampling and extrapolation thereof);

*MBIA Ins. Corp.*, 927 N.Y.S.2d at 534 (sufficient for plaintiff to allege that its review of a

sample of loans had a high percentage of breaches of the loans reviewed); *MBIA Ins. Corp. v.*

*Countrywide Home Loans Inc.*, 30 Misc.3d 1201(A), at *6, 958 N.Y.S.2d 647 (Sup. Ct. N.Y.

Cnty. 2010) (statistical sampling is a sufficient method of proof to establish pool-wide breach

rates). As these cases make clear, under New York law there is no requirement that a plaintiff

specifically identify each breaching Mortgage Loan to assert a claim for damages thereon.

Accordingly, Plaintiff is entitled to recover damages for all breaching Mortgage Loans –

including Mortgage Loans discovered by DBSP to be in breach as of the Closing Date of the

securitization – not just those that were identified in the Breach Notices.

### D. DBSP's Contention That There Is No Relief As To Liquidated And Foreclosed Loans Is Flawed And Premature

DBSP argues that between the closing of the securitization and the time DBSP's

repurchase obligation was triggered as a result of the Breach Notices, some of the loans at issue

were extinguished pursuant to foreclosure and liquidation and thus are not subject to repurchase.

MTD, pp. 20-25. This last-ditch attempt to avoid answering the Complaint is unavailing, and the

argument is premature. The Complaint alleges no facts regarding liquidated loans; DBSP's

attempts to make that record on a motion to dismiss are patently inappropriate.[12]

### 1. The Trustee Provided Timely And Sufficient Notice Of DBSP's Breaches Of Its Representations And Warranties

DBSP complains that the Breach Notices were not prompt because they were sent "over four years after the Closing Date."  MTD, p. 20.  This is irrelevant.  DBSP's obligations, representations and warranties are enforceable for the life of the securitization and beyond.  *See* MLPA §16.  Under the PSA, "promptness" is viewed not in relation to the closing date, but in relation to the date when the Trustee discovers or received notice of the breaches.  PSA § 2.03(a).  *See also ACE 2006*-SL2, 2013 WL 1981345, at *4 (where breach notices were sent some six years after agreements were executed and Trustee sued shortly thereafter, case was timely and the court observed that "[h]ad the Trustee not made its demand in 2012 and instead waited a number of years to file suit, the inquiry might be different").  The Trustee sent each Breach Notice shortly after receiving the results of the Forensic Reviews.  Compl. ¶¶ 2, 67-76. That is indisputably "prompt" under the PSA and governing law, and regardless, the question of promptness itself is one of fact not subject to resolution on a pre-answer motion to dismiss.[13]

Likewise, DBSP's complaint that the Trustee simply forwarded breach notice letters sent to it by a certificateholder (MTD, p. 20) is without basis.  The detailed Breach Notices (*see*

---

[12] As the *ACE 2006-SL2* court explained, "[e]ven if DBSP were correct that Released, Charged Off, and Liquidated Loans are not subject to repurchase, dismissal would still not be warranted because DBSP needs to establish that all of the non-conforming loans fell into these defined categories.  Discovery is necessary to make these determinations."  2013 WL 1981345, at *4.

[13] Under New York law, notice given within two months of the discovery of an alleged breach is deemed reasonable. *Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc.*, No. 1:04-cv-1432, 2007 WL 2904591, at *13 (S.D. Ind. Sept. 28, 2007) ("*Laureate*"); *LaSalle*, 237 F. Supp. 2d at 637 (applying New York law).  The authority DBSP cites (*see* MTD, p. 18) is not to the contrary.  *See MASTR Asset Backed Secs. Trust 2006-HE3 v. WMC Mortg. Corp*, 843 F. Supp. 2d 996, 1000 (D. Minn. 2012) ("*WMC I*") (notice not provided within the contractually-required 60 days); *M&I Bank, FSB v. Coughlin*, No. CV 09-02282, 2012 WL 602365, at *4 (D. Ariz. Feb. 24, 2012) (notice given *five months* after discovery was not prompt).  Moreover, DBSP's reliance on *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) and *WMC I*, 843 F. Supp. 2d is misguided as neither case included allegations like those here, that the sponsor discovered breaches on day one without the need of notice from the Trustee.

Compl. ¶¶ 69-76) were more than sufficient under both the parties' agreements, which do not impose any requirements as to the substance of such notices (see MLPA § 13), and applicable law. *See, e.g., Laureate*, 2007 WL 2904591, at *12-13.  As the New York State Supreme Court found in *Assured Guar. Mun. Corp. v. DB Structured Prods. Inc.,* the third-party plaintiff (which happened to be DBSP) provided adequate notice where it simply forwarded to the third-party defendant a breach notice sent to it.  927 N.Y.S.2d 880, 896-97 (Sup. Ct. N.Y. Cnty. 2011).[14]

Finally, DBSP's cure and repurchase obligations arose irrespective of any notice received from the Trustee, since DBSP is alleged to have discovered the breaching loans on its own and subsequently failed to cure or repurchase such loans.  *See, e.g.*, MLPA § 7(a); PSA § 2.03(a); Compl. ¶¶ 1, 3, 11-15, 64, 85-88.

### 2.  DBSP Must Answer For Breaching Loans, Even If Liquidated

#### a)  The PSA Does Not Exclude 'Liquidated Loans' From DBSP's Obligations

Nothing in either the PSA or MLPA states that DBSP's obligation to repurchase breaching loans does not extend to liquidated loans.  To the contrary, Section 2.03 of the PSA makes no distinction between *active* loans and *liquidated* loans.

> [T]he Trustee shall enforce the obligations of the Sponsor under the Mortgage Loan Purchase Agreement ... to repurchase such Mortgage Loan from REMIC I at the Purchase Price within ninety (90) days after the date on which the Sponsor was notified of such breach, if and to the extent that the Sponsor is obligated to do so under the [MLPA].

Unable to point to any active/liquidated distinction in the operative provision, DBSP seeks to import one through the term "Mortgage Loan."  DBSP argues that, under "traditional notions of property law," a mortgage loan does not include a "liquidated" mortgage loan.  MTD,

---

[14] Contrary to DBSP's assertion (MTD, p. 20), the Trustee was not required to verify the breaches.  The PSA expressly provides that the Trustee "shall [not] be bound to make any investigation into the facts or matters stated in any … notice" it receives with respect to the Trust.  PSA § 9.02 (a)(v). *See also* MLPA §§ 4(e), 7(a).

pp. 22-23.  But the term "Mortgage Loan" is specifically defined, and that definition must be used.[15]  Here, the parties defined a "Mortgage Loan" as "[e]ach mortgage loan transferred and assigned to the Trustee and the Mortgage Loan Documents for which have been delivered to the Custodian … , *as held from time to time* as a part of the Trust Fund, the Mortgage Loans so held being identified in the Mortgage Loan Schedule."  PSA § 1.01, Defined Terms.  Thus, as long as the loan was held "from time to time as a part of the Trust Fund" and identified on the Mortgage Loan Schedule, it is a "Mortgage Loan" for purposes of Section 2.03's repurchase protocol and is subject to repurchase, regardless of its current status or whether liquidated or not.[16]

DBSP's interpretation is contrary to multiple PSA provisions that refer to "Mortgage Loans" even though the underlying loan is no longer active.  For example, the term "Subsequent Recoveries" relates to amounts received by the Trust with respect to Mortgage Loans "*after the liquidation* or disposition of such defaulted Mortgage Loan."  PSA § 1.01, Defined Terms. Moreover, Section 3.08 of the PSA reflects that "all Subsequent Recoveries with respect to the related Mortgage Loans" are collected for the benefit of the Trust, meaning that even though the note that is secured by the mortgage or deed of trust is past due and the related mortgaged property has been foreclosed upon to mitigate damages, the Trust continues to have rights in that Mortgage Loan and continues to be entitled to payments made in relation to that loan subsequent to those events.  *Id.* § 3.08(a)(iii).  Likewise, Section 5.04(b) of the PSA refers to the Servicer's receipt of Subsequent Recoveries "with respect to a *Mortgage Loan* serviced by it," which means

---

[15] *See Mionis v. Bank Julius Baer & Co., Ltd.*, 301 A.D.2d 104, 109 (1st Dep't 2002) ("[F]ail[ure] to give effect to a defined term" "violated a fundamental principle of contract interpretation").

[16] The primary trust, REMIC I, which holds the Mortgage Loans and from which they are repurchased, is defined equally broadly to include both "Mortgage Loans and Prepayment Charges *as from time to time* are subject to this Agreement" and "rights under the Mortgage Loan Purchase Agreement" assigned to the Trust.  PSA §1.01, Defined Terms.  This too makes clear that the Trust's collateral is not limited to loans actively in the Trust, but rather includes a broad basket of rights with respect to all Mortgage Loans that "from time to time" are placed in the Trust.

that the Servicer retains certain obligations with respect to a Mortgage Loan *even after liquidation*. *Id.* § 5.04(b).  In fact, there are many other instances in the PSA where the term Mortgage Loan is used in reference to a loan that was subject to liquidation, indicating that a post-liquidation loan is a Mortgage Loan for purposes of the contract.[17]

### b)  Liquidated Loans Can Be Repurchased

DBSP next argues that once a Mortgage Loan has been liquidated, it cannot be repurchased because Section 2.03 of the PSA requires the Trustee to release "to [DBSP] the related Mortgage File and … [to] execute and deliver such instruments of transfer or assignment" in order to "vest" in DBSP any such loan.  MTD, pp. 22-23 (quoting PSA § 2.03(a)).  Relying heavily on one outlier case from Minnesota – *MASTR Asset Backed Secs. Trust 2006-HE3 v. WMC Mortg. Corp.*, No. 11-2542, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) ("*WMC II*") – DBSP argues that a liquidated Mortgage Loan cannot be "vest[ed]" in the Sponsor and that the notion of repurchasing or transferring a liquidated loan is contrary to "common sense."  MTD, pp. 21-22 (quoting *WMC II*).[18]

New York courts have repeatedly rejected this argument.  For example, in *Love Funding I*, this Court held with respect to an argument identical to DBSP's:

> This contention is based on a faulty premise.… ***Even though the mortgage has been foreclosed, several components of the Arlington Loan continue to exist, which can be repurchased by Love Funding***, including the Louisiana court's judgment against Cyrus in favor of the Trust and the proceeds, which are held by

---

[17] DBSP's contention that its interpretation "comports with traditional notions of property law" is also wrong for the reasons discussed *infra*, Section I.D.2.b.

[18] Defendant's other cases either support Plaintiff's position or are inapposite.  In *Nack Holdings, LLC v. Kalb*, 13 So. 3d 92, 95 (Fla. Dist. Ct. App. 2009), the court "construe[d] references to the . . . 'loan' and 'existing mortgage' to be references to the amended final [deficiency] judgment of foreclosure," which shows that even if a property has been foreclosed upon, debt obligations – potentially subject to repurchase – remain.  In *Mendez v. Oakmont Mortg. Co., Inc*., No. 10 CV 1970, 2010 WL 4818000, at *2 (S.D. Cal. Nov. 22, 2010), the court acknowledged that unpaid debt on a mortgage can survive foreclosure, even once the lien itself is extinguished.  *First Place Bank v. Skyline Funding, Inc*., No. 10 CV 2044, 2011 WL 3273071 (N.D. Ill. July 27, 2011) did not even apply New York law.

a receiver, from the court-ordered sale of the Property. Therefore, Love Funding's
performance is not impossible.

*Trust for the Cert. Holders of the Merrill Lynch Mortg. Pass-Through Certs. Series 1999-C1 v.
Love Funding Corp.*, No. 04 Civ. 9890, 2005 WL 2582177, at *8 (S.D.N.Y. Oct. 11, 2005)
("*Love Funding I*").  *See also Wells Fargo II*, 2013 WL 1285289, at *10; *Wells Fargo Bank,
N.A. v. LaSalle Bank Nat'l Ass'n*, No. Civ. 08 1125, 2011 WL 3739170, at *3 (W.D. Okla. Aug.
23, 2011) ("*Wells Fargo I*") (same) (applying New York law), *Resolution Trust*, 280 F.3d at 18
(same) (applying New York law); *LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*,
No. 02 CV 9916, 2005 WL 3046292, at *5 (S.D.N.Y. Nov. 14, 2005) (repurchase provision
remedy "must remedy the damages" and "make [Plaintiff] whole.").

The fact is that "several components" of a mortgage loan "continue to exist" even after
liquidation.  For example, in many states, the lender has the right to seek a separate judgment
against the borrower for any deficiency remaining after the foreclosure proceeding.  *See, e.g.*,
*438 Main St., Inc. v. Vandor, Inc.*, No. 12000/6820, 2002 WL 32128611 (N.Y. Cnty. Ct. Sept.
13, 2002); Restatement (Third) of Property (Mortgages), § 8.5 (1997) (comment c) (whether the
mortgage lien continues to exist "is irrelevant to the issue of personal liability on the [debt]
obligation").[19]  Because a foreclosure on the underlying property does not extinguish the
Mortgage Loan (as defined in the PSA), and because the Mortgage Loan Documents, Mortgage
File, and associated rights continue to exist following foreclosure, nothing precludes the Trustee
from returning the Mortgage File to DBSP or vesting remaining rights in it.

The New York State Supreme Court's decision in *ACE 2006-SL2* is exactly on point.
There, DBSP argued that liquidated and foreclosed upon loans could not be repurchased because

---

[19] As discussed above, the PSA itself contemplates additional recoveries on Mortgage Loans even after liquidation.

they are no longer assets of the trust or that, under the PSA's definition of "Purchase Price," their repurchase price would equal $0. 2013 WL 1981345, at *5. Rejecting both of these contentions as "unconvincing" (*id.*), the Court explained that DBSP's argument would render it "perversely incentivized to fill the Trust with junk mortgages that would expeditiously default so that they could be Released, Charged Off, or Liquidated before a repurchase claim is made." *Id.* Instead, the Court noted that "where, as here, borrowers allegedly defaulted due to the Representations being false, such risk is meant to be borne by DBSP." *Id.* So too here.

DBSP's argument is contrary to positions it has taken in other courts.[20] On the one hand, DBSP tells this Court that liquidated loans cannot be repurchased, while on the other, it submits repurchase claims for liquidated loans and "REO Sold" properties, which properties are no longer in the Trust because they have been sold by the servicer, in another court. Whether or not liquidated loans can be repurchased does not depend on DBSP's shifting strategic interests.

In any event, with the exception of the one Minnesota decision, courts have consistently held that – even if a loan cannot be "repurchased" in the technical sense – "a repurchase provision is designed to shift the risk to the selling party in the event that a dispute arises," and consequently, the plaintiff should still be made whole by way of damages. *Wells Fargo II*, 2013 WL 1285289, at *10; *ACE 2006-SL2*, 2013 WL 1981345, at *5 ("DBSP's contention that it cannot 'repurchase' a loan because the loan technically does not 'exist' after foreclosure, misses the point. Foreclosure is not an alternative means of recovery for non-conforming loans; it is a

---

[20] As a buyer of loans, DBSP has demanded that *other* loan originators repurchase liquidated loans it has acquired. For example, in its proof of claim filed in the ResMAE Mortgage Company bankruptcy, DBSP sought over $1.5 million for multiple "Charge[d] off" and "Charge[d] off/Closed" loans, as well as "REO Sold" properties. Real Estate Owned, or REO, properties are acquired by the servicer on behalf of the Trust, typically when there are no buyers at foreclosure. The servicer generally rehabilitates and then resells the property. *See* Addendum to Amended Proofs of Claim of DB Structured Products, Inc., et al, *In re ResMAE Bankruptcy*, No. 07-10177, Claim No. 234 (Bankr. D. Del. July 11, 2007).

set off to DBSP's obligation to pay back the cost of the loan.… The PSA's damages calculation includes foreclosure proceeds….”); *Trust for the Cert. Holders of the Merrill Lynch Mortg. Pass-Through Certs. Series 1999-C1 v. Love Funding Corp.*, 736 F. Supp. 2d 716, 719-20, 725-26 (S.D.N.Y. 2010) (“*Love Funding II*”) (awarding damages where mortgages at issue had been foreclosed upon and repurchase demands were not made until after foreclosure); *Flagstar II*, 2013 WL 440114, at *37-39 (awarding damages where the loans at issue had been charged off); *Resolution Trust*, 280 F.3d at 15, 18 (affirming damages where loans had been removed due to “foreclosure or because the interest in the loan had been sold”); *LaSalle*, 237 F. Supp. 2d at 638 (awarding damages “if it is not possible for defendant Lehman to repurchase the FEL Facility mortgage loan”).

Prior to the Minnesota decision, DBSP (and other sponsors and loan sellers) routinely made “make whole” payments on liquidated loans and did not contest its obligation to do so.[21] Compl. ¶ 86. Contrary to DBSP's assertion, “when the parties know or have reason to know of the custom or usage [in the industry] … [it] is deemed to form a part of the contract and to enter into the intention of the parties.” *Kasen v. Morrell*, 6 A.D.2d 816, 816-817 (2d Dep't 1958).[22]

### c) The Repurchase Price for Liquidated Loans Is Not Zero, But In Any Event Presents An Inherent Fact Question

DBSP contends that, under the PSA, the repurchase price for any liquidated loans would be zero and that this purportedly shows the parties' intent not to contract for their repurchase.

---

[21] DBSP argues that the parties knew how to “provide for ‘make whole' payments” for extinguished loans when they desired to, citing an agreement at issue in *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010 (Sup. Ct. N.Y. Cnty.). MTD, p. 23 n.31. But the sentence immediately following the cited language refers to the “make whole” payments as “repurchase[s].” The mere fact that the PSA here does not expressly mention “make whole” payments does not mean that the parties did not intend the term “repurchase” to have the same meaning as in the *Assured* agreement.

[22] *See also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (contract must be interpreted in light “of the customs, practices, usages and terminology as generally understood in the particular trade or business.”); *Edison v. Viva Int'l, Ltd.*, 70 A.D.2d 379, 383 (1st Dep't 1979) (“A contract must be construed according to the custom and use prevailing in a particular trade.”).

MTD, p. 23.  DBSP is mistaken.  Under the PSA, the "Purchase Price" at which a Mortgage Loan is repurchased consists of "100% of the Stated Principal Balance thereof as of the date of purchase," along with interest, fees and expenses.  PSA § 1.01, Defined Terms.   The definition of Stated Principal Balance incorporates the concept of a "Liquidation Event," which term is defined to include when "a Final Recovery Determination is made as to such Mortgage Loan."  *Id.*  The definition of "Final Recovery Determination" expressly *carves out repurchases* *"pursuant to or as contemplated by Section 2.03"* – the PSA provision imposing a repurchase obligation on DBSP – as well as purchases under Sections 3.13(c) and 10.01.  PSA § 1.01, Defined Terms.  While a "Final Recovery Determination" establishes that the Stated Principal Balance for the loans is zero for accounting purposes, the carve-out – standard in RMBS securitizations – ensures that this does *not* apply to repurchases.[23]

The definition of Stated Principal Balance as zero when there is a Final Recovery Determination was a capital structure requirement to ensure that the stated face value of the securities is not artificially inflated by non-performing loans.  Failure to write down non-performing loans would artificially inflate the Stated Principal Balance and skew other amounts that pivot off the Stated Principal Balance, such as the Overcollateralization Amount, Realized Loss, interest and principal Loss Allocation Amounts, and Subordinated Balance, each of which ultimately determines the payout to certificateholders.  *See, e.g.*, PSA, § 1.01.[24]

---

[23] Discovery and expert testimony will show that the provision in the PSA pursuant to which the Stated Principal Balance of a Liquidated Loan could be reduced to "zero" is solely for the purpose of Trust accounting, which requires a reconciliation between the Trust's assets and its liabilities.  The genesis of that language is a capital structure requirement for purposes of determining the extent of overcollateralization and related concepts in the securitization at any point in time during the life of the Trust.

[24] For example, the Overcollateralization Amount is the excess of the aggregate Stated Principal Balances of the Mortgage Loans and REO Properties over the sum of the aggregate Certificate Principal Balances of the Class A, Mezzanine, and Class P Certificates.  PSA § 1.01, Defined Terms.  The Overcollateralization Amount affects the Overcollateralization Increase Amount and Overcollateralization Reduction Amount, both of which are part of the calculation of Principal Distribution Amounts, distributed to Certificateholders pursuant to PSA § 5.01(c)(5).

Given this structure, a carve-out was necessary to prevent a commercially absurd result. Without carving out such purchases from the definition of Final Recovery Determination, the Sponsor could avoid liability and the Servicer could unilaterally make a Final Recovery Determination and repurchase loans for zero dollars.[25]  This is not what the parties intended and is exactly the result that the repurchase provisions were designed to avoid.  It is for this reason that, contrary to DBSP's assertion, a Final Recovery Determination expressly *does not* render the Stated Principal Balance zero in the repurchase context.  Rather, the Stated Principal Balance remains at its prior value designed to "make-whole" the Trust upon repurchase.

Finally, DBSP's counter-textual interpretation would also lead to several absurd results. *First*, it would mean that the Trust's ability to be made whole for DBSP's breaches hinged entirely upon a discretionary administrative decision by the Servicer as to whether to write-off a loan, *i.e.,* make a Final Recovery Determination.[26]  *Second*, under DBSP's argument, repurchase of a Mortgage Loan must be effected before liquidation in order for the Trust to preserve its rights.  This is commercially absurd.  The Servicer would have to pursue all repurchase recoveries prior to any foreclosure before issuing a Final Recovery Determination for each Mortgage Loan.  This would delay foreclosure proceedings *for years* at great cost to certificateholders; require the Trust to treat countless non-performing Mortgage Loans as performing for accounting purposes; and flood the courts with loan repurchase litigation.

---

[25] Under Section 2.03 of the PSA, the Sponsor must repurchase at the *Purchase Price* Mortgage Loans that breach representations and warranties.  Likewise, Section 3.13(c) of the PSA permits the Servicer to purchase from the Trust at the *Purchase Price* any Mortgage Loan that is 90-days or more delinquent.  And Section 10.01(b) of the PSA permits the Servicer to purchase all remaining Mortgage Loans using a *Purchase Price*-driven formula when the Scheduled Principal Balance of the mortgage pool is reduced to 10% or less of the original balance.

[26] As Judge Rakoff observed in *Flagstar I*, "the classification of a loan as either 'charged off' or 'non-charged off' merely reflects a discretionary prediction as to whether or not any further payments will be made on that loan." 2011 WL 5335566, at *7.  Judge Rakoff correctly recognized that it would be absurd to surmise that certificateholders agreed to hinge their right to potentially recover millions of dollars on nothing more than the discretionary prediction of the servicer.  *Id*. at *4, 7.

Nothing in the PSA indicates the parties intended such a commercially unreasonable result. *See Reape v. N.Y. News, Inc.*, 122 A.D.2d 29, 30 (2d Dep't 1986) ("[W]here a particular interpretation would lead to an absurd result, the courts can reject such a construction," even if it requires that "the actual words … be transplanted, supplied or entirely rejected to clarify the meaning of the contract."); *Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420, 1997 WL 317343, at *4 (S.D.N.Y. June 12, 1997) (same).

### 3.   DBSP's Initial Breaches Make The Liquidated Loan Argument Irrelevant

The Complaint clearly alleges that DBSP discovered breaches of its representations and warranties on day one of the securitization, was required to cure or repurchase the breaching loans at that time, and did not do so.  Compl. ¶¶ 1, 3, 11-15, 64, 85-88.  Even assuming *arguendo* that, thereafter, the loan servicer foreclosed upon breaching loans (because they were not performing), that action would only have been by way of mitigation of damages and cannot possibly serve to relieve DBSP of its liability for its breaches of its separate antecedent contractual obligations.  DBSP cannot complain of efforts to mitigate damages resulting from its breaches. *See Cornell v. T.V. Dev. Corp.*, 17 N.Y.2d 69, 75 (1966); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 72 A.D.3d 409, 412 (1st Dep't 2010).

### 4.   Failing All Else, The Trustee Is Entitled To Rescissory Damages

DBSP contends that the Trustee's claim for rescissory damages is an improper attempt to "circumvent" the sole repurchase remedy.  MTD, pp. 15-19 (quoting *MBIA Ins. Co. v. Residential Funding Co., LLC*, No. 603552/08, 2009 WL 5178337, at *7 (Sup. Ct. N.Y. Cnty. Dec. 22, 2009)).  First, breaches of contract that are so fundamental they vitiate the entire purpose of the parties' agreements give rise to a right of rescission. *See Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (rescission available for breach of contract "so substantial and

fundamental as to strongly tend to defeat the object of the parties in making the contract");

*K.M.L. Labs. Ltd. v. Hopper*, 830 F. Supp. 159, 163 (E.D.N.Y. 1993) (rescission appropriate

where failure to transfer a viable company, as promised in the agreements, "constitutes a breach

that goes to the root of the contract").[27]  Second, an award of rescissory damages lies squarely

within this Court's broad equitable authority.[28]  *See, e.g., Grand Union Co. v. Cord Meyer Dev.*

*Co.*, 761 F.2d 141, 147 (2d Cir. 1985) (explaining that "the court[] [has] equitable power to

devise whatever remedy it believes in its discretion is necessary to make injured parties

whole").[29]

As to DBSP's argument that its breaches are not serious enough to warrant rescissory

damages (*see* MTD, pp. 18-19), the breaches include transfer to a trust of over one-thousand

breaching loans intended to support securities sold to investors, and its failure to cure or

repurchase a single breaching loan, even when DBSP discovered them on its own, before being

---

[27] New York recognizes five grounds for rescission: "1) failure of consideration; 2) fraud in making the contract; 3) inability to perform the contract; 4) repudiation of the contract or an essential part of it; and 5) a breach that substantially defeats the purpose of the contract."  *Rosewood Apts. Corp. v. Perpignano*, 200 F. Supp. 2d 269, 272 (S.D.N.Y. 2002).

[28] *Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.,* 88 A.D.2d 461 (2d Dep't 1982), upon which DBSP relies (*see* MTD, p. 15 n.17), is not to the contrary.  That case stands for the limited (and, here, irrelevant) proposition that "a defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract and thereafter maintain an action at law for damages attributable to the fraud." *Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 110-11 (1st Dep't 1994) (citing and discussing *Clearview Concrete*). Separately, DBSP's assertion that Plaintiff's cause of action for rescissory damages is subject to the heightened pleading requirements of Rule 9(b) is incorrect.  The notice pleading requirements of Rule 8(a) apply.

[29] The First Department's recent denial of MBIA's demand for rescissory damages is not to the contrary.  There, the court had a fully developed factual record and found that rescissory damages were unavailable for reasons not present here, including that "[p]laintiff voluntarily gave up the right to seek rescission – *under any circumstances*," making rescission "legally unavailable" by virtue of the plaintiff's waiver.  *MBIA*, 105 A.D.3d at 413 (emphasis in original).  As the New York Court of Appeals has explained, if "the plaintiff *succeeds in proving* that he is entitled to equitable relief, equity may grant damages in addition to or as an incident of some other special equitable relief or, where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy."  *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443 (1956) (emphasis in original). *See Buffalo Builders Supply Co. v. Reeb*, 247 N.Y. 170, 176 (1928) (explaining that "[t]he terms upon which rescission may be granted where complete restoration of the parties to their former position is impossible rests in the sound discretion of the district courts" and awarding monetary damages to effectuate rescission where a return to the status quo ante was impossible).

notified by the Trustee.  *See* Compl. ¶¶ 1, 3, 11-15, 64, 85-88.  Those breaches and repudiations

of the parties' agreement are more than sufficient to give rise to rescissory damages.[30]

## II.  PLAINTIFF STATES A VALID CLAIM FOR DECLARATORY JUDGMENT

DBSP also argues that the Complaint's fourth and final cause of action must be dismissed

as duplicative of the breach of contract claims.  *See* MTD, p. 25.  This is not so.  Plaintiff's

fourth cause of action involves obligations entirely distinct from those of the underlying contract

claims (namely, DBSP's obligation to reimburse the Trustee for its expenses in enforcing its

rights).  *See, e.g.*, Compl. ¶ 89 ("*In addition* to its cure, substitution and repurchase obligations,

DBSP *further* agreed to reimburse the Trustee for the expenses of enforcing DBSP's obligations

under the MLPA and the PSA.").  Because a case or controversy would remain as to Plaintiff's

right to reimbursement even if it voluntarily dismissed its other causes of action, Plaintiff's

declaratory judgment claim is not duplicative.  *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 756 F.

Supp. 2d 461, 467 (S.D.N.Y. 2010) (collecting authority and holding that declaratory judgment

counterclaim as to right to terminate copyright grant, which turned on whether or not works were

created for hire, was not duplicative of claim regarding validity of termination notice); *Enzo*

*Biochem, Inc. v. Johnson & Johnson*, No. 87 Civ. 6125, 1992 WL 309613, at *10 (S.D.N.Y. Oct.

15, 1992) (finding breach of contract claim based on joint venture agreement concerning DNA

probes was not duplicative of declaratory judgment claim based on development of Hepatitis-C

diagnostic product with a third-party).

---

[30] At a minimum, any argument by DBSP premised on the severity of the breaches alleged involves factual issues
not appropriate for resolution on a pre-answer motion to dismiss.

**CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied.[31]

Dated:   New York, New York
June 14, 2013


HOLWELL SHUSTER & GOLDBERG LLP

By:___/s/ Michael S. Shuster_____
Michael S. Shuster (mshuster@hsgllp.com)
Avi Israeli (aisraeli@hsgllp.com)
Lani Perlman (lperlman@hsgllp.com)
Eileen DeLucia (edelucia@hsgllp.com)
125 Broad Street, 39th Floor
New York, NY 10004
(646) 837-5151

*Attorneys for Plaintiff*

---

[31] In the alternative, any dismissal should be without prejudice with leave to replead.

25