UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 6 2015

In re Ace Securities Corp. RMBS Litigation

13-cv-1869 (AJN)
13-cv-2053 (AJN)
13-cv-2828 (AJN)
13-cv-3687 (AJN)

OPINION &
ORDER

ALISON J. NATHAN, District Judge:

In these four related actions, Plaintiff—whose exact identity is at the heart of the current dispute—has sued Defendant DB Structured Products Corporation for breach of contract in connection with the securitization and sale of residential mortgage loans. According to the Complaint, Defendant breached representations and warranties regarding the origination and characteristics of mortgages constituting the residential mortgage-backed securities that were sold to Plaintiff, and failed to cure such breaches when they were brought to Defendants' attention.

Before the Court are not the merits of the underlying breach-of-contract dispute, but the antecedent questions of whether the Court has subject-matter jurisdiction over these four consolidated actions and, if not, whether Plaintiff should be granted leave to amend the complaints to cure any jurisdictional defects. These issues largely turn on whether the Plaintiff in each action before the Court is the trustee of the trust created to securitize residential mortgage loans, as Plaintiff argues, or the trust itself, as suggested by the caption of each Complaint. For the reasons that follow, the Court GRANTS Plaintiff's request for leave to amend the Complaint to unequivocally name the Trustee as Plaintiff.

I.      Background

The underlying allegations of these lawsuits are mostly irrelevant to resolving the question of subject-matter jurisdiction, and therefore are recounted only in general terms. According to the allegations in the Complaint,[1] Defendant sponsored the securitization of residential mortgage loans, and sold them to an entity called Ace Securities Corp. so that they could ultimately be deposited into the Trust. Compl. ¶ 38. The initial sale of the loans took place pursuant to a Mortgage Loan Purchase Agreement, which was then incorporated into a Pooling and Servicing Agreement that created the Trust. Compl. ¶¶ 10 & n.4, 21. The Mortgage Loan Purchase Agreement made warranties and representations concerning the characteristics, quality, and risk profile of the underlying mortgage loans, which Plaintiff alleges Defendant breached, and failed to either cure the breach or repurchase the loans, as the agreement required. Compl. ¶¶ 41, 46, 50, 56-66, 77-84.

The Complaint was filed on March 20, 2013. Its caption identified the Plaintiff as "ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2007-HE3 by HSBC BANK USA, NATIONAL ASSOCIATION, in its capacity as Trustee."[2] The introductory paragraph of the Complaint goes on to state:

> Plaintiff ACE Securities Corp. Home Equity Loan Trust, Series 2007-HE3 (the "Trust"), by and through HSBC Bank USA, National Association, in its capacity as trustee (the "Trustee"), and its attorneys, Holwell Shuster & Goldberg, and at the direction of certain holders of residential mortgage backed securities issued by the Trust, as and for its Complaint against DB Structures Products, Inc. ("DBSP" or the "Defendant"), states and alleges as follows[.]

Not long after discovery began in this action, Plaintiff advised the Court of the opinion in *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2007-1 ex rel. HSBC Bank USA,*

---

[1] Because the complaints in the four consolidated cases do not differ in any material respects on these points, for ease of reference the Court will cite to the Complaint in the lead case, No. 13-cv-1869 (AJN).

[2] The captions of the complaints in the three consolidated cases differ only in their identification of the specific Trust at issue: Series 2007-WM2 (No. 13-cv-2053); Series 2007 HE-4 (No. 13-cv-2828); and Series 2007 HE-5 (No. 13-cv-3687). The complaints in those actions were filed on March 27, 2013; April 29, 2013; and May 31, 2013, respectively.

2

*N.A. v. Nomura Credit & Capital, Inc.*, 27 F. Supp. 3d 487 (S.D.N.Y. 2014) (Oetken, J.). *See* Dkt. No. 49.[3] In an action almost identical to the one before the Court, *Nomura* held that when a trust sues in its own name, its citizenship for diversity purposes is determined by the citizenship of the beneficiaries of the trust, at least in part. *Id.* at 492. The court contrasted this with a suit brought in the name of the trustees, wherein the citizenship of the trustees controls so long as the trustee is more than a "sham" with no real power to control the litigation or the trust's property. *Id.* The court then looked at facial indicators of the identity of the Plaintiff, such as the caption, to determine that the trust was the plaintiff, rather than the trustees, and because at least one beneficiary of the trust had the same citizenship as the defendant, the court dismissed the case for lack of subject matter jurisdiction. *Id.* at 493.

Plaintiff has maintained that, despite *Nomura*, the Court has subject-matter jurisdiction over these actions because the Trustee, not the Trust, is the Plaintiff in each action, and therefore the beneficiaries' citizenship can be ignored for the purpose of determining diversity jurisdiction. In the alternative, Plaintiff expressed its intention to seek leave to amend the Complaint in order to the name the Trustee, rather than the Trust, as Plaintiff. The Court set a briefing schedule in light of the ongoing dispute over *Nomura*'s applicability, *see* Dkt. No. 56, and Plaintiff filed a motion for leave to amend or to add a party on July 29, 2014, *see* Dkt. No. 62. Plaintiff's motion papers also raise an argument that amendment is unnecessary, because the Court has subject-matter jurisdiction over the cases as is.

## II. Discussion

### A. Subject-Matter Jurisdiction Basics

Federal courts are courts of limited jurisdiction, and a court must have subject-matter jurisdiction at all times. Subject-matter jurisdiction cannot be waived, and can be raised at any time during litigation. *See Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994). The federal diversity jurisdiction statute, 28 U.S.C. § 1332, requires complete

---

[3] Docket citations are to the lead case, No. 13-cv-1869 (AJN).

3

diversity of citizenship, and jurisdiction is destroyed if any citizens of the same state appear on both sides of an action. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967).

A plaintiff asserting federal subject-matter jurisdiction bears the burden of proving its existence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court may consider matters outside of the pleadings when determining if subject-matter jurisdiction exists. *Id.* All well-pleaded facts will be taken as true, but a showing of jurisdiction is not made by drawing all reasonable inferences in favor of the plaintiff. *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

### B. Determining the Citizenship of a Trust

Though Plaintiff directly challenges the holding in *Nomura* only as an alternative argument, for the purpose of establishing the general rules that will govern the Court's analysis, *Nomura*'s analytical structure is best taken up at the outset. As described above, *Nomura* held that determination of a trust's citizenship for diversity purposes depends on whether the suit is brought by the trust itself or the trustees. If the suit is brought by the trust itself, then the citizenships of the beneficiaries *and* the trustees are imputed to the trust for diversity purposes. *Nomura*, 27 F. Supp. 3d at 491-92. When the trustees of the trust are the plaintiffs, the question then becomes whether the trustee possesses "certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 492 (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980)). If so, then the trustees' citizenship alone controls; if not, the court looks to the citizenship of the real party who possesses those powers. *Id.*

In reaching its conclusion, the *Nomura* court relied on this Court's decision in *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 226 (2013), along with the Third Circuit's decision in *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 203-04 (3d Cir. 2007), and a decision from the District of the District of Columbia, *Yueh-Lan Wang ex rel. Wong v. NM-US Trust*, 841 F. Supp. 2d 198, 205 (D.D.C. 2012) (Boasberg, J.). These cases, in turn, based their reasoning on the distinction between the Supreme Court's opinions in *Navarro*

4

*Savings Association v. Lee*, 446 U.S. 458 (1980), and *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). In *Navarro*, the Court held that trustees who possess the customary powers of trustees and have the authority to "sue and be sued in their capacity as trustees" can be "real parties to the controversy for the purposes of diversity jurisdiction," and thus may invoke federal courts' diversity jurisdiction without regard to the citizenship of the trust's beneficiaries. 446 U.S. at 464-66. *Carden*, however, explained that *Navarro* had "nothing to do with the citizenship of the 'trust,'" and instead decided only the separate question of whether the trustees were real parties to the controversy. *Carden*, 494 U.S. at 191-93. Accordingly, *Carden* requires courts to take a relatively narrow reading of *Navarro*, as it demonstrated that *Navarro* established only that trustees may be real parties in interest when they sue on behalf of a trust, and not that the citizenship of a trust itself is necessarily coextensive with that of its trustees.

Reasoning from the Court's explicit rejection of *Navarro* as defining the appropriate rule for determining the citizenship of a trust, the Third Circuit in *Emerald* held that the citizenship of a trust is determined by the citizenship of its beneficiaries *and* its trustees. *Emerald*, 492 F.3d at 203-04. This rule best conformed with the Supreme Court's holding in *Carden* that an artificial entity has the citizenship of all of its "members," and the Third Circuit noted that it had the added benefits of serving the interests of judicial economy, respecting the principles of federalism, and avoiding illogical outcomes in cases where either the trustee or the beneficiaries are the ones with real control over the trust. *Id.* at 204. This Court adopted the Third Circuit's reasoning in *Mills*, and noted that several courts in this circuit have come to the same conclusion. *Mills*, 921 F. Supp. 2d at 227. *Nomura* can now be added to that chorus.

Not all courts agree with this approach. Several circuits have stated that a trust takes the citizenship of its trustees, full-stop, and many of them state this as the holding of *Navarro*. *See, e.g., Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 n.6 (5th Cir. 2009); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Nomura*, 27 F. Supp. 3d at 491 (collecting cases). Regardless of these statements, none of which appear to amount to explicit holdings, the Court

5

continues to find that the rule in *Emerald*, *Mills*, and *Nomura* is a correct statement of the law. Accordingly, the Court rejects Plaintiff's suggestion that it reconsider *Mills*, and will determine the citizenship of the trust based on the citizenship of both the beneficiaries and the trustee if the trust has sued in its own name, and based on the citizenship of the trustee if the suit was brought in the trustee's name.

As *Nomura* demonstrated, these varying methods of determining the citizenship of a trust based on the entity who brings suit present a potential jurisdictional problem in diversity cases: in suits where the trustees are completely diverse from the defendant, but the beneficiaries are not, the existence of diversity jurisdiction may turn on how the plaintiff's identity is alleged. Applying this rule, *Nomura* looked at technical aspects of the complaint, such as the caption and the introductory paragraph, to determine that the suit had been brought by the trust itself, and therefore dismissed without prejudice for lack of subject matter jurisdiction. 27 F. Supp. 3d at 492-93. Though the parties here raise substantial arguments about the appropriate way to read Plaintiff's allegations as to its own identity, and the effect of those allegations on the Court's subject-matter jurisdiction, Plaintiff also raises a possibility that was not put before the court in *Nomura*: that Plaintiff should be granted leave to amend the technical allegations of the complaint to demonstrate that the Trustee is unequivocally the Plaintiff. Because such an amendment could obviate any jurisdictional questions in this case, the Court will turn to it now.

### III.   Leave to Amend

Plaintiff's motion for leave to amend requests that the Court grant it permission to clarify the allegations of the Plaintiff's identity, and remove any doubt that this lawsuit is brought in the Trustee's name. The proposed amended complaint reverses the order of the Trust and Trustee in the caption, so that the amended caption would read "HSBC BANK USA, NATIONAL ASSOCIATION, in its capacity as Trustee of ACE SECURITIES CORP. HOME EQUITY

6

LOAN TRUST, SERIES 2007-HE3."[4]  The amended complaint would make a similar change to the introductory paragraph of the complaint, which would read, "Plaintiff HSBC Bank USA, National Association, in its capacity as Trustee of Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE3 (the "Trust"), by and through its attorneys, Holwell Shuster & Goldberg LLP, and at the direction of certain holders … as and for its Complaint against DB Structured Products, Inc. ("DBSP" or the "Defendant"), states and alleges as follows[.]"[5]

Courts are directed by Federal Rule of Civil Procedure 15 to freely grant leave to amend when justice so requires.  The Second Circuit has explained that the "history of the [Federal] Rules [of Civil Procedure] makes clear … that Rule 15 was meant to be generally applicable to a proposed change of plaintiffs." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir. 1997).  Moreover, the Circuit Court has held that Rule 15(c), which permits amendments that add defendants to relate back to the initial filing of the complaint under certain circumstances, applies fully to changes in plaintiff as well.  *Id.*  Rule 15(c) thus applies to allow relation back of amendments changing plaintiffs if the defendant had sufficient notice of the action so that the change would not prejudice it on the merits, and the defendant knew or should have known that the plaintiff substituted into the suit would have brought the action against it, "but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

The Second Circuit in *Advanced Magnetics* agreed with the Seventh Circuit's reasoning that substitution of plaintiffs in circumstances where the allegations of the complaint are essentially the same should "normally be freely allowed."  106 F.3d at 19 (citing *Staren v. Am. Nat'l Bank & Trust Co of Chi..*, 529 F.2d 1257, 1263 (7th Cir. 1976)).  As the Seventh Circuit

---

[4] As described *supra* at 2, the caption of the current Complaint identifies the plaintiff as "ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2007-HE3 by HSBC BANK USA, NATIONAL ASSOCIATION, in its capacity as Trustee."

[5] As described *supra* at 2, the introductory paragraph of the current Complaint reads, "Plaintiff ACE Securities Corp. Home Equity Loan Trust, Series 2007-HE3 (the "Trust"), by and through HSBC Bank USA, National Association, in its capacity as trustee (the "Trustee"), and its attorneys, Holwell Shuster & Goldberg, and at the direction of certain holders of residential mortgage backed securities issued by the Trust, as and for its Complaint against DB Structures Products, Inc. ("DBSP" or the "Defendant"), states and alleges as follows[.]"

has stated, when deciding whether substitution of plaintiffs commences a new action or instead may be permitted on the same complaint and, indeed, relate back to the date that complaint was filed, "[t]he emphasis is to be placed on the determination of whether the amended complaint arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." *Staren*, 529 F.2d at 1263. A "merely formal" amendment that "in no way alters the known facts and issues on which the action is based" will generally be permitted, and relate back to the original filing of the complaint. *Id.*; *see also Advanced Magnetics*, 106 F.3d at 19.

      The Second Circuit has further explained that Federal Rule of Civil Procedure 17 is relevant to determining whether an amendment should be permitted to substitute plaintiffs. That rule provides that actions must be brought in the name of the real party in interest, and that an action may not be dismissed for failure to proceed in that party's name unless they are first given a chance to "ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a). Rule 17 also provides that a trustee of an express trust may be a real party in interest. *Id.* In *Advanced Magnetics*, the Second Circuit stated that "there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice," *Advanced Magnetics*, 106 F.3d at 20 (internal quotation marks omitted), and that Rule 17(a) substitution should be liberally allowed when "merely formal" changes are involved and the factual allegations as to events and participants remain the same, *id.*

      Rule 15, as interpreted in *Advanced Magnetics*, clearly points toward granting Plaintiff leave to amend in order to name unequivocally the Trustee as the Plaintiff. Such an amendment will have no effect on the substantive allegations of the complaint, and indeed will affect nothing outside of a slight word ordering change in the caption and introductory paragraph. The litigation would have been conducted identically to this point had the Complaint been filed with the proposed change made. In fact, until *Nomura* was brought to the Court's attention, all parties involved were oblivious to any difference between conducting the lawsuit in the Trust's or the Trustee's name, and often referred to the two interchangeably. Furthermore, even though Rule

8

17(a) uses permissive language when it states that a trustee of an express trust "may" be the real party in interest, and therefore does not appear to compel substitution of the Trustee as the real party in interest, it certainly establishes that the Trustee may be named as a real party in interest and conduct this litigation on the Trust's behalf.

Defendant argues that a party may not use a Rule 15 amendment to "create" jurisdiction where it otherwise did not exist from the initiation of the suit. The Second Circuit has, indeed, laid forth the rule that defects in jurisdiction inherent from the outset of a case cannot be cured by later amendment. For example, in *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir. 1983), an ERISA fund brought suit in its own name against defendants who allegedly caused it to enter into insurance contracts at exorbitant rates. However, ERISA's jurisdictional provision permitted only a "participant, beneficiary, or fiduciary" to bring suit to enforce the Act's relevant provisions. After deciding that the federal courts' subject-matter jurisdiction did not extend to enforcement suits brought by funds themselves, the court then held that the district court was correct to deny leave to amend to substitute plan participants as plaintiffs. *Id.* at 893-94. The court explained that if jurisdiction is lacking when a suit is first brought, it cannot later be created by adding a plaintiff with a claim that can be heard in federal court. *Id.* at 893 (citing *Pianta v. H.M. Reich Co.*, 77 F.2d 888, 890 (2d Cir. 1935)). The court also rejected the notion that 28 U.S.C. § 1653 provided a solution. That statute provides that "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The *Pressrooms Unions* court relied on the distinction between defective allegations of jurisdiction, which can be amended, and defective jurisdiction, which cannot be amended away. *Id.* at 893; *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) (§ 1653 authorizes amendments only to defective allegations of jurisdiction, not to fix "defects in the jurisdictional facts"). The Second Circuit has since reiterated that intervention of new parties cannot be used to cure jurisdictional defects that existed when a case was filed. *See Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012). In diversity cases, this concern may arise if a new

9

party, "suing in its own right," attempts to enter litigation over which a court had no subject-matter jurisdiction from the beginning; the new party's claim in this circumstances "has the characteristics of a new lawsuit." *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774-75 (5th Cir. 1986).

*Disability Advocates* and *Pressroom Unions* are distinguishable from this action. In those cases, the plaintiffs to be added via amendment were not functionally the same entity as the plaintiff whose presence in the lawsuit destroyed jurisdiction, but instead wholly new individuals who, until that point, had not been participants in the case. As the Second Circuit has later described *Pressroom Unions*, it was a case about whether a Plaintiff may "substitute a new *cause of action* over which there is subject-matter jurisdiction for one in which there is not." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998) (emphasis added). Here, there is neither a new cause of action nor a "new" party. Nor would the proposed changes to the caption and introductory paragraph cause the amended complaint to have "the characteristics of a new lawsuit." The Trustee is the functional equivalent of the Trust for the purpose of conducting this litigation. Moreover, Rule 17(a) guarantees the Trustee the right to litigate as the real party in interest on behalf of the Trust. This is not a case, then, where a party's late addition is intended to cure an action that a federal court otherwise could not have heard. *Cf. Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 95 (2d Cir. 1990) (describing *Pressroom Unions* as concerning whether an "intervening claim" can "confer" subject-matter jurisdiction). There has been federal court jurisdiction over this controversy from the beginning, and an unclear allegation of the identity of the Plaintiff is not an obstacle to recognizing that jurisdiction.

Furthermore, there is no prejudice to Defendant in permitting this technical amendment, and it offers no tactical advantage to Plaintiff. *See E.R. Squibb & Sons, Inc. v. Lloyd & Cos.*, 241 F.3d 154, 162 (2d Cir. 2001) (permitting amendment to substitute replacement defendant on named plaintiff's death when "no prejudice results if we allow the suit to be recast" against the new defendant, and holding that "the weight of diversity jurisprudence" holds that "amendments

10

to cure subject-matter jurisdiction relate back"). The claims stated and discovery conducted thus far will remain identical and equally applicable. *Cf. Newman-Green*, 490 U.S. at 838 (describing such considerations when dismissing a nonessential party to preserve jurisdiction under Federal Rule of Civil Procedure 21). And it cannot be argued that the fundamental rationale of diversity jurisdiction—"opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties," *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010)—is disserved by permitting amendment; the Trustee has always been diverse from Defendant, and was always permitted by Rule 17 to sue as the real party in interest.

The Court recognizes that its conclusion is in some tension with the resolution in *Nomura*, where the court dismissed Plaintiff's claims without prejudice rather than permitting amendment. But it does not appear that the plaintiff in *Nomura* requested leave to amend the technical allegations on which jurisdiction turned, nor is the question of whether amendment is appropriate squarely addressed in *Nomura*. Regardless of *Nomura*'s ultimate disposition, the Court finds that on the facts of this case leave to amend should be granted. The Court's jurisdiction over this suit would have been readily apparent from the time the Complaint was filed if a correct and clear allegation of the identity of the Plaintiff as the Trustee had been made. In this case, in every substantive respect, whether the Trustee or the Trust is named as Plaintiff is a mere formality; the rights and remedies belonging to each are entirely coextensive. The matter here is not one of attempting to retroactively create jurisdiction where it did not exist, then, but rather recognizing that a technically incorrect party may have been named as Plaintiff in the case caption and opening paragraph, and applying the Second Circuit's clear rules governing substitution of parties in *Advanced Mechanics* to allow the Trustee to be unequivocally named as Plaintiff, and remove all doubt as to the Court's jurisdiction. Accordingly, the Court concludes that leave to amend the Complaint to name Trustee as Plaintiff should be granted.

## IV.  Conclusion

For the foregoing reasons, leave to amend the Complaint on the terms proposed by Plaintiff is GRANTED. All conferences and deadlines shall remain as currently scheduled.

This resolves Docket No. 62.

SO ORDERED.

Dated: March 26, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge